Case No. 06-1196, Riste & Ricas, Inc. v. Secretary of the Army, Mr. Vilsack Thank you, Your Honor. May it please the Court. This case arises from the Armed Services and Border Contract Appeals' misinterpretation and misapplication of our language as to the nature of the decisions of the ASPCA. In particular, what we're dealing with here is a Riste & Ricas construction contract with these United Agencies of Fort Belvoir. The contract was terminated for default. Riste & Ricas appealed that decision to the ASPCA. It was eventually overturned by the ASPCA. The termination was converted by order of the ASPCA to the termination from the convenience of the government. Is there any issue before us when the time is at the moment? Yes, Your Honor. Just whether... Please assume that we've adjusted the background in regard to the... Thank you. So what then happened is that under the terms of the farm, Riste & Ricas has a year from the effective date of the termination to file a termination settlement proposal. The language comes out of the termination for convenience proposal. The termination settlement proposal was submitted after the one-year period, but for a further 120 days. Now, the ASPCA, after a motion for summary judgment by the government, found that the effective date is the date that the counsel for the appellant receives their decision converting from a T for me to a T for C. Our position is at the ASPCA and for you is that the effective date does not occur until the decision of the ASPCA has finished its appeal period, 120 days after the date of the decision. Now, what the government points to and what the ASPCA pointed to is that the definition in the FAR of effective date of termination, because that's not defined in the T for C clause, is that where you have the termination notice received after the stop of contract performance, according to the FAR, that the date of... ...is the date the contractor received the notice. Now, the ASPCA's current interpretation of that provision conflates and confuses the difference between a termination notice from a contracting officer, which does not have to have any sort of appeal period except for the one-year potential appeal to the Court of Federal Claims, as opposed to an ASPCA decision not being final and effective for 120 days during a potential appeal period. Similarly, if it was a decision from the Court of Federal Claims in a 60-day period when the item could have been appealed. So, we're asking the Court to correct the ASPCA's interpretation of what effective date means. That in the context of a board or court decision that converts a T for D to a T for C, that the one-year time period to submit a termination proposal should run and must run from the date that the decision is effective. And it's not effective until the case is no longer appealable. The one case that the ASPCA has referenced in this is called the Swanson Group, where they mentioned in passing that, oh, by the way, the contractor received our decision on conversion to a T for C on X date, and so that's the effective date for purposes of the T for C clause. This court vacated that decision and accepted that interpretation in dicta, but didn't give any analysis. I'm asking you now to consider the analysis and reconsider, not really reconsider because it was dicta. You didn't actually decide it, but to decide that the ASP is incorrect. You said earlier, and it seems to me an important point. I'm sorry, will you direct the exposition? That the board's opinion or a court opinion, which is subject to further review, is not effective, I think was the word you used. It seems to me that normally the decision of the board or the court would be effective in the sense that absent some action on the part of a dissatisfied party to try to avoid the effect of the judgment, that judgment is enforceable. That judgment has legal effect. So I wonder if, since this seems to be central to your analysis, I wonder if it isn't the case that, for example, a decision that we might issue would be one that a party could take action upon unless the other party finds some way to stop the action from proceeding, either by seeking a stay or by filing and obtaining a renegotiator in the Supreme Court. So it's effective, it's just may not be final in the sense that there's nothing you can do about it but allow it to be attacked if it all doesn't work. I think, Your Honor, the decision has been issued, but it's not enforceable until the appeal period runs. Well, when you say not enforceable, I mean, certainly a judgment of a court is enforceable unless you have some relief from a reviewing court, typically. Right, Your Honor. Is it different with the ASPCA? Well, I think what the difference is is that there happens to be a particularly long appeal period. For the Court of Federal Claims, it's 60 days, so obviously that's shorter. In most state and federal courts, it's about 30 days or maybe even 10 days. So because the ASPCA appeal period is long, it does not necessarily affect the concept that it's not enforceable until someone has, until the appeal period has passed. If you take, for example, a situation where in a regular state court or even a federal district court, if an issue, an order is issued saying that my client has to pay someone else's client $1,000, and I believe it's specifically in the federal or state statutes that you cannot start collection proceedings until the running of the appeal period. If I have that judgment for $1,000, and if someone attempted to come to my client and say, okay, now you have to pay $1,000, I can turn that away by saying, well, look, we're going to appeal within the appeal period. You can't- Well, the normal rule, I don't have the rules. The normal rule, I think, in, for example, a court of appeals, a court of appeals decides a case, and issues judgment against you. That judgment is fully effective until and unless you get it stayed, either by the court or by the Supreme Court, where you get a writ of certiorari which stays any further proceedings. I don't think that there's any prohibition against enforcement of the judgment unless you take steps to render it non-enforceable and obtain some kind of writ that interferes with its enforcement. Isn't that your understanding, at least at the appellate level? I don't do a lot of appellate work, Your Honor, so I'm not entirely sure I can- I don't do a lot of trial work. Okay, I'm going to the trial level, and that's a DSPCA decision as a trial decision. If, say, the government attempted to go to the concept of determination for default, and the board upholds determination for default and grants the government's right to offset for $1 million against other contracts. If the government- You don't appeal, and you say, I'm not intending to appeal, but I don't want you to take action against me until- That's a different thing, Your Honor. If my client specifically says, we don't intend to appeal, then I would say they've waived their appellate rights, okay? But if in that period of 120 days from the DSPCA, the government attempts to take an offset, not having the offset statute in front of me, I don't think they can start the collection proceedings. I think they have to wait until the 120 days. For example, if I get a judgment against the government at the Court of Federal Claims, for example, I have a bid protest going, and the Court of Federal Claims grants my bid protest and says that my protest is sustained, and I try and take a collection action against the government for equal access to the Justice Act, attorney's fees, I will be turned back if I submit that, each claim, before the 120-day period. That is specifically what happened to me in the past. I think EJ has special time restrictions. In fact, the Supreme Court, I think, recently addressed the special time provisions for EJ. I'm not sure that's generalizable. But it is, Your Honor, because it goes to the same concept. That would be my collection action, attempting to enforce the judgment against the government. It's the same thing that you're saying, that couldn't you have- Why can't you have an enforcement proceeding prior to the running of the appeal period? I can't have an enforcement proceeding as my successful protest until the running of the 120-day appeal period. And I think that is the natural analogy here. In the context of the contracting officer's final decision, where we have what the FAR is contemplating, that you get a notice of termination, and you have to submit the termination proposal within the one-year effective date of that, if you get it after you finish performance, you can appeal the contracting officer's termination decision up to a year. So those term periods run continuously. Either at the end of the year you're going to submit a termination proposal, or you can appeal the contracting officer's decision to the Court of Federal Claims. So what I'm saying here is that by what the ASBCA has done, is they've essentially cut off a portion of the appeal period because someone has the right to appeal the ASBCA's decision for 120 days after it comes out. So it's sort of in this case the government that would appeal, if anybody could correct me. Because the government- because your termination for default was converted to a termination for convenience, so you prevailed before the board. I understand, Your Honor, but in the situation of, say, a partial conversion to TPC, it could be either signed or there may have been something within the board's decision that, while they converted to a TPC, they also deny the request of a positive claim on our part. Let me ask you one thing. You make the argument that there are disputed issues of material fact here. I wonder from the argument, really, why you say that. Because there's no dispute as to when the decision was received. And the argument that you've been making, the first argument you make in your discussion with Judge Bryson, clearly suggests that this is simply a legal issue. What fact issues are in dispute here? You may be right, you may be wrong on the issue you've been discussing with Judge Bryson. Where are the fact issues in this case? That discussion in the appellate briefs was giving explanation as to what happened below. There really is no fact dispute here. But below at the ASPCA, because they moved for summary judgment, we responded to it two ways. One, that there are factual matters in dispute. And there were concerning as to the date as to when the termination settlement proposal was submitted to the contracting officer. Then also on the legal issue that even if we agree as to what date the termination settlement proposal was submitted, that that was not within a year of the effective date. So there was, for your purposes of deciding the current case, I don't believe there's a necessity. That's what I wanted to clarify. You're telling us there aren't any fact issues that stand in the way of either ruling the board was correct or ruling it was wrong. I don't think it's necessary for you to rule on fact issues to reach your decision. There was a factual dispute before the board. But I believe the way the government has constructed its brief, they say, okay, even if we concede the date that the appellant says it submitted its termination proposal, they're late. So you don't need to get to that. And I- Let's hear from the other side. We'll say- Thank you, Your Honor. Thank you, Your Honor. May it please the court. Good afternoon. There are two principal issues before this court. The first is whether the board properly determined that the effective date of its conversion of the T for D to a T for C was the date that R&R received its decision. The second issue before the court, as you were just discussing, is whether there are any material issues of that. And if you'd like, I can continue with that line of questioning right off the bat. It's our position that the court adopts our construction of the regulations and the FAR provisions that are incorporated into the contract, that there aren't any material issues of fact that would have prevented the SPCA from actuating its decision, because the only factual issue that needed to be resolved, which was not an issue, was, was their settlement proposal actually submitted prior to June 12, 2003? Both sides concede that it wasn't submitted before that, so there wouldn't be any material issues of fact that prevented that. However, if this court were to adopt the appellant's construction of the regulations in this case, there would be a material issue of fact, because under their construction, they would have had it submitted, their settlement proposal prior to September 29, 2003, because that would have marked the end of the 120-day period. The date, October 23rd, is outside of that period. So the question of fact, though, is it if they sent something back to be signed that there aren't any disputed facts? There aren't any – well, there's disputed facts regarding the date that the settlement proposal was actually submitted to the contracting officer. The contracting officer stated below that it wasn't submitted until October 23rd, 2003. Appellants in this case argue that it was, in fact, submitted on July 12th. That's an issue of fact that wasn't resolved by the SPCA below, because the board found that it didn't need to resolve which of those two dates it may have been sent by, because it was understood and it was conceded that it wasn't submitted prior to June 12, 2003, which would have been the end of the one-year period marking the date that R&R received notice. Okay. It would be helpful if you returned to the question of the effective date. Certainly. This case is resolved by simply looking at the regulations and the FAR provisions that are incorporated to the contract. In R&R's contract, it incorporated FAR provision 52.2492, which states that they have a year from the effective date of the T4C to submit their settlement proposal. Now, pursuant to FAR 49.001, which was also included in the contract, the effective date of termination was specifically defined as the date in which the notice of termination requires the contractor to stop performance of the contract, or if the termination notice is received by the contractor subsequent to the date fixed for termination, then the effective date of the termination was the date that the notice was received. Now, in this case, the notice was received on June 8, 2002. Now, because R&R was initially required to stop performance of the contract— The notice was the ineffective decision of the board. That's right, and it was found below that they received by a certified mailer attorney received a copy of the decision that was submitted by the board, which provided them with notice that they had a T4C on their hands, and that they had to submit a settlement proposal within one year of that date. What would have happened if the board had agreed that it was received, what was the date, June 8, 2002? June 12. June 12, 2002. Well, actually, no, I'm sorry, it was June 8, correct? No, June 8, 2002 was when it was received. What if on July 8, 2002, there had been an appeal filed? Based on the FAR provision, I was assuming an appeal filed by the government. Yes. On the other side of the veil, they wouldn't appeal. Right. Based on the FAR provision that's included in the contract, they still would have a year from the date the notice was received to submit their settlement proposal, regardless of whether an appeal was filed by the government. But that really is where the logic supports their position, because they'd have to go through all of this negotiation as to how much would be payable at the convenience termination while the basic issue is still under litigation. That is contrary to the general logical arrangement as to when things need to be done. Well, we would submit to the court that it's not an illogical manifestation, that it's simply a literal interpretation of the regulation that's in play here. It states that you have one year from the date of receiving notice, that you can describe what would happen in the event of the government appealing and them being in a position of submitting a termination for convenience proposal as being perhaps an adverse consequence that would flow from that. But based upon this precise language of the FAR provision, based upon the precise language of the regulations which mirror the FAR provisions within which the contract operates, they have one year from the date they receive notice. This court held similarly, too. In England v. Swanson, this court specifically held in a similar case where you had a T for D that was diverted into a T for C, that the effective date pursuant to the FAR, pursuant to the regulations, wasn't that. So what is your response to Mr. del Surio's contention? He acknowledges that statement in the Swanson case, but said that given what would happen in the case that it was dicta. But it wasn't simply dicta because it was essential to this court's decision in England v. Swanson that it actually be able to define the appeal period, or the one-year period that they had within which they could submit the settlement proposal in order to find a report below that jurisdiction. This court, in order to find the ASBCA lecture session had to say these were the out-of-time tours of the one-year period. There wasn't any settlement proposal that was submitted within that period and there was no request for an extension that was granted either within that period. So therefore, they didn't have a right to appeal from the simple denial of the request for an extension. So is your view, let's say that contrary to the facts here, the day after the judgment, this party had submitted the proposal for termination of the convenience. Meanwhile, the government is going through all the things that you have to do to get permission to appeal. But you also have an obligation to respond with reasonable promise and diligence. So in that sequence, the government would be obliged to complete the negotiations of the convenience settlement, pay up, and then in due time file the appeal saying you got it wrong. Well, not necessarily. All the one-year period does is it provides the contractor with a placeholder for a right to appeal if there's some sort of dispute that stems from the convenience cost that they incur. You're saying there's no obligation on the government to respond. All the burden is on them. Hey, you meet this deadline while we sit back and take our time. Well, not necessarily while we sit back and take our time, but there is no countervailing government duty to look at those convenience charges within a certain amount of time. Do you think that's the congressional intent or the intent of these regulations? Well, this Court has held in passing before that the way that these rates were designed is simply to ensure for a speedy, amicable resolution of potential disputes that may flow from termination for convenience with regard to convenience costs and that there shouldn't be anything that will drag the process down if you have deadlines that lie outside of work. You're saying that burden applies only to the contractor, not to the government. That's correct. The government doesn't have to be speedy or anything else? Well, in exercising its duties, as it always should, it should try to get things done as quickly as it possibly can. But there's nothing that's pointed to in the regulations to provide precise time limits for the government to actually consider these convenience costs or claims that come in vis-à-vis a similar proposal. You would say, Mr. DeFoy, I guess, that the contractor, in a sense, is protected. If that sequence took place, namely the day after the decision was received, the claim was submitted, at that point what could happen is the agency could negotiate while the government appealed Maybe the negotiations would go forward, maybe they wouldn't, maybe they'd be put on hold, but neither of them. I suppose the protection for the contractor is that it gets interest. That's correct. On the claim. That's one thing. And again, this is a prophylactic measure that's designed to protect the contractor, to provide them with the right to appeal. What happens during that appeal period doesn't really have any bearing on when the effective date is and whether the contractor actually gets their similar proposal in on time. Once they get their proposal in on time, a whole host of things could flow from that, whether it be negotiation, it could be a withdrawal of an appeal of a converted T4C, anything could potentially happen. But no harm will necessarily result from this. No harm will come from the cost of pulling together these figures, which can be precise, so that's certainly harm. If it needn't be done, if all you have to do is measure it from the date when they will know whether or not an appeal is to be taken, because if, in fact, the appeal is filed, then these negotiations don't proceed at all, right? And there is no obligation to continue to negotiate the termination of the convenience payment. Well, if the contractor is that concerned with the cost, if they're that perniciously high with regard to submitting a settlement proposal, all they have to do is wait 120 days, see what the government has done. If the government has an appeal, then they can submit it on day 121. And they still have 200 plus days after that to actually file something. And during that period, they can continue to negotiate with the government. The system's designed so there's going to be interaction between both parties, and the system requires that certain actions be taken, whether that just be the submission of the claim. And there's been no showing below that that would have been particularly expensive in this case or that it would be in general. This is just a matter of strict regulatory and FAR construction. And it states specifically that the effective date is triggered by receiving notice of the termination for convenience, provided that that follows the date that the performance was supposed to stop. Mr. DeFalco, picking up on my exchange with Mr. Goswara, do you have a view as to whether a decision of the ASBCA would be enforceable within the period within which either party could appeal? Well, my first answer to that is that it really doesn't matter whether it would be enforceable or not. But then the whole issue around whether a decision becomes final is a whole different subject. I understand. And I think, to be fair to Mr. Goswara, making the argument is not as if it's dispositive. It's merely informative of the question of how we should look at this time and period. But as to assuming that it is the least arguably informative, what is the situation? Well, it's my understanding, if there were to convert a T4C, that the government can either appeal from it or can begin to work with the T4C. It's not mandated to take any particular actions just because the ASBCA has converted a T4D into a T4C. Actually, I think the question is a little broader than just this particular case or this particular setting. It's whether there is, in effect, a mandatory stay of the effectiveness or the enforceability of judgments from the Boards of Contract Appeals pending the expiration of a period within which any party can appeal. Is there any such stay or not? It's my understanding that perhaps a contractor could use a stay as a shield, perhaps, if it were required to take action, but not the government. The question is, is there an automatic – I mean, you can get a stay, just as you can from a district court or a court of appeals – but is there an automatic stay such that, absent the entry of an additional order by the court or the board, there's no enforcement? Or is it possible to enforce them the day after the decision? I don't think there is an automatic stay. I think that a stay could be sought, but it doesn't automatically flow from the board's decision. And the government can do several things to effectuate the board's judgment by issuing a modification to the contract that complies with whatever the board's order is. There's different things that can flow from it, but I'm not aware of any automatic stay that comes from it that forces the parties to freeze their actions for up to 120 days to determine whether one of the parties is going to appeal from the decision. Any more questions? Thank you. Okay. Thank you very much. If somebody has some time, let's call them in. Mr. Chairman, let me ask you one question right off the top of your head. What is your response to Mr. Duclos's position that the statement that appears in Swanson is not dictated? He explained why he said it, because he said it's necessary. We had to say that there in order to frame the period to determine the jurisdictional issue. One, that isn't how the court described it. The court merely said, oh, and by the way, the document was the board's decision was received on this date, and that is the effective date under this provision. So the court was not putting it in the context of saying, and we're saying this because we have to find this in order to have jurisdiction here. So it is pure dicta. They're merely just saying it for the sake of saying it, which is my understanding of what dicta is. I don't believe there was a language as to this is a jurisdictional statement. As to Judge Newman's statement about the logic of the situation, that is the inherent problem that we have here, because, as I said to Judge Bryson, I can't enforce a decision to get attorney's fees under Egypt for 120 days. I have then a brief window. I get a decision, have to wait 120 days, and then I have 30 days within which to submit the Egypt application. The government is essentially saying here, but we don't have to worry about that 120-day period in order to take whatever action it takes. So if, for example, my client submits a termination settlement proposal, and then the government appeals, as the court is aware, for me to have jurisdiction at some further body if the government refuses to negotiate or breaks off negotiations concerning that termination settlement proposal, I don't initially get interest on the termination settlement proposal. We have to go through a period of negotiations. We have to essentially do a dance that, okay, government, here's my termination settlement proposal. It's essentially an opening shot. The government has the right to come back and say, no, we're willing to pay you this or we need more information or something. But interest doesn't attach, and I don't have a right to go to the board of the Court of Federal Claims to sue on the government's refusal to pay my client's termination settlement proposal. It doesn't become a claim until the negotiations have broken off. We would then be going through that whole dance, that negotiation dance, and not accruing interest, waiting for the government to make up its mind to see if it's going to appeal. Similarly, as Mr. Buffo said, well, the government could issue a modification two days after the court or the board issues its decision changing the T for D to a T for C. Well, in the instance of the government issuing a modification to change the nature of the contract, I would say they're waiving their appeal rights, and that's a signal that they're not going to appeal. In that instance, it would be a little hard for the government to issue the mod and then appeal the decision if they've already taken that step. That's essentially all I have. As to the material issue of fact that Mr. Shaw was bringing up, I don't think you need to decide that issue. That's really something for the board to decide on remand if this court decides that the effective date is as we define it. And that would be something for the board to- Thank you, Mr. Rosario. Thank you. Mr. Buffo, please take the submission.